UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X   :
Lisa M. DeJesus,                                             :
                                                             :
                    Plaintiff,                               :
                                                             :
         -against-                                           :
                                                             :
Commissioner of Social Security,                             :
                                                             :
                    Defendant.         :   :
-------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__12/8/2021__
```

**OPINION**

1:20-CV-6815 (KHP)

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Lisa M. DeJesus ("Plaintiff"), represented by counsel, commenced this action against Defendant, Commissioner of the Social Security Administration (the "Commissioner"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff seeks review of the Commissioner's decision that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act from May 1, 2014, the onset date of her alleged disability, through the date of the decision, June 22, 2019.

For the reasons set forth below, the Court DENIES Plaintiff's motion and GRANTS the Commissioner's motion for judgment on the pleadings.

**BACKGROUND**

Plaintiff, who was born in 1981, is married with five children, two of whom are now adults.  She obtained her GED and has completed some college.  When she was attending college, she worked as a receptionist and more recently worked occasionally selling Avon products.  She has been diagnosed with Major Depressive Disorder, Post-Traumatic Stress Disorder ("PTSD"), and Generalized Anxiety Disorder ("GAD").  She has a history of drug and alcohol abuse but is currently in remission.

1. *Procedural History*

On April 6, 2018, Plaintiff filed an application for Social Security Disability ("SSD") and Supplemental Security Income("SSI") benefits alleging disability due to mental health impairments (Major Depressive Disorder, PTSD and GAD), and asthma.[1]

Plaintiff's claims were denied after initial review on May 21, 2018.  At Plaintiff's request, a hearing before Administrative Law Judge ("ALJ") Denise M. Martin was held on April 24, 2019 via videoconference.  Plaintiff appeared with counsel and testified at the hearing.  Vocational Expert ("VE") Sandra Steele also testified.  On June 18, 2019, ALJ Martin denied Plaintiff's application.  Plaintiff appealed, and on June 26, 2020, the Appeals Council affirmed the decision of the ALJ.

Plaintiff commenced this action on August 24, 2020, contending that: (1) the ALJ failed to properly evaluate the medical opinion evidence pertaining to Plaintiff's mental impairments; and (2) the ALJ failed to properly evaluate Plaintiff's subjective statements about her mental health-related symptoms and limitations.  (ECF No. 1.)  The parties submitted a Joint Stipulation ("J.S.") in lieu of cross-motions for judgment on the pleadings (ECF No. 19), pursuant to this Court's Order at ECF No. 12.

---

[1] Plaintiff does not challenge the ALJ's decision relating to her physical impairment of asthma. Thus, this Court's review focuses on the ALJ's decision pertaining only to Plaintiff's mental impairments.

2. *Summary of Relevant Medical Evidence*[2]

a. **HRHCARE, Counseling Center**

On August 8, 2014, Plaintiff visited HRHCare, a counseling Center in Bronx, New York, where she was diagnosed with major depressive disorder, recurrent episode with anxious distress; post-traumatic stress disorder ("PTSD"); panic disorder; and polysubstance dependence after a mental status examination revealed Plaintiff had soft speech; visual hallucinations of people; and fair concentration, fund of knowledge, short-term recall, insight, impulse control, retention, intellectual functioning, and judgment.  (A.R. 675-78.)  Plaintiff was prescribed Celexa and Seroquel.  *Id.*  Plaintiff reported low mood, difficulty concentrating, anxiety, panic attacks with symptoms of sweaty palms, crying, shaking, difficulty breathing, and feelings of imminent death.  (A.R. 677.)  At that time, Plaintiff had not used marijuana for two months or cocaine for one month.  *Id.*

Two months later, Plaintiff returned to HRHCare where she had symptoms of easy distractibility and irritation; frequent verbal outbursts; feeling nervous in groups of people; isolation from others; flashbacks and intrusive memories; nightmares; disturbed sleep, difficulty concentrating, panic attacks; and visual hallucinations.  (A.R. 671.)  Plaintiff reported she often felt overwhelmed and suffered panic attacks two-to-three times a week.  *Id.*  In visits in mid-2014 to early-2015, Plaintiff reported visual hallucinations but otherwise had no other areas of concern.  (A.R. 655.)

---

[2] The Court only discusses Plaintiff's mental health treatment because no issues have been raised concerning the ALJ's findings related to Plaintiff's asthma.

3

In September 2016, Plaintiff met with a social worker and reported that she had not taken her medication for a long time, described a depressed mood that lasted most of the day nearly every day, restlessness, anxiety, and difficulty concentrating. (A.R. 652.) At this visit, Plaintiff's medical status exam indicated fair short-term and long-term recall, a euthymic mood, fair concentration and judgment, and poor insight and impulse control. (A.R. 653.)

In October 2016, Plaintiff reported that her "anxiety is getting high and [her] PTSD is driving [her] nuts." (A.R. 649.) Plaintiff also reported increased depression and panic attacks, leading to issues travelling. *Id.* In December 2016, the treatment notes indicate that Plaintiff admitted to using cocaine and marijuana but declined to provide more information. (A.R. 643.). The treatment notes from this visit assessed Plaintiff as having poor judgment and impulse control. (A.R. 643-44.) In February 2017, Plaintiff visited HRHCare seeking refills for her medications. (A.R. 641.) The doctor's treatment notes reflect his assessment that Plaintiff had poor judgment and impulse control. *Id.*

   **b. Patrick Tigenoah, Nurse Practitioner of Psychiatry ("NP-P") at HRHCARE**

The record shows that NP-P Tigenoah was one of two long-term health care providers treating Plaintiff's mental health conditions. Accordingly, the Court provides greater detail of his treatment and related notes below.

June 1, 2017 (A.R. 638.)

- Plaintiff reported increased anxiety attacks and was started on Clonazepam.
- Mental status exam: cooperative attitude; normal speech; appropriate thought form; denied hallucinations; euthymic mood; alert cognitive function; oriented to person, place, time, situation; good concentration, short-term and long-term recall, fund of knowledge, insight, judgment, and impulse control. (A.R. 638-39.)

4

- Assessed major depressive disorder, recurrent and moderate; post-traumatic stress disorder ("PTSD"), chronic; generalized anxiety disorder ("GAD"); alcohol and cocaine abuse; and cannabis dependency (A.R. 639.)

September 21, 2017 (A.R. 633.)

- Plaintiff reported medication effectiveness.
- Mental status exam: cooperative attitude; normal speech; appropriate thought form; denied hallucinations; euthymic mood; alert cognitive function; oriented to person, place, time, situation; good concentration, short-term and long-term recall, fund of knowledge, insight, judgment, and impulse control.  (A.R. 633-34.)
- Assessed major depressive disorder, recurrent and moderate; PTSD, chronic; GAD; alcohol and cocaine abuse; and cannabis dependency (A.R. 634.).

October 28, 2017 (A.R. 630.)

- Mental status exam: cooperative and anxious attitude; normal speech, appropriate thought form; denied hallucinations; euthymic, depressed, and anxious; alert cognitive function; oriented to person, place, time, situation; good concentration, short-term and long-term recall, fund of knowledge, insight, judgment, and impulse control.  (R. 630-31.)
- Assessed major depressive disorder, recurrent and moderate; PTSD, chronic; panic disorder; and cocaine and marijuana abuse.  (A.R. 631.)

November 25, 2017 (A.R. 625.)

- Plaintiff reported medication effectiveness and decreased anxiety and depression.
- Mental status exam: cooperative, anxious, and withdrawn attitude; normal speech; appropriate thought form; denied hallucinations; euthymic, depressed, anxious, and worried mood; alert cognitive function; oriented to person, place, time, situation; good concentration, short-term and long-term recall, fund of knowledge, insight, judgment, and impulse control.  (A.R. 625-26.)
- Assessed major depressive disorder, recurrent and moderate; PTSD, chronic; and GAD. (A.R. 626.)

January 18, 2018 (A.R. 619.)

- Plaintiff reported medication effectiveness and decreased anxiety and depression.
- Mental status exam: cooperative, anxious, and withdrawn attitude; normal speech; appropriate thought form; denied hallucinations; euthymic, depressed, anxious, and worried mood; alert cognitive function; oriented to person, place, time, situation; good

concentration, short-term and long-term recall, fund of knowledge, insight, judgment, and impulse control.  (A.R. 619-20.)

- Assessed PTSD, chronic.  (A.R. 620.)

February 8, 2018 (A.R. 616.)

- Plaintiff reported medication ineffectiveness and difficulty sleeping at night and an increased depressed mood.  Plaintiff's Remeron was titrated up.
- Mental status exam: cooperative, confused, anxious, withdrawn, and submissive attitude; normal speech; appropriate thought form; denied hallucinations; euthymic, depressed, anxious, and worried mood; alert cognitive function; oriented to person, place, time, situation; good concentration, short-term and long-term recall, and fund of knowledge; and fair insight, judgment, and impulse control.  (A.R. 616-17.)
- Assessed PTSD, chronic.  (A.R. 617.)

March 8, 2018 (A.R. 613.)

- Plaintiff reported medication ineffectiveness and difficulty sleeping at night and an increased depressed mood.  Plaintiff also reported experiencing flashbacks.  Plaintiff's Remeron was titrated up.
- Mental status exam: cooperative, confused, and withdrawn attitude; speech was normal; appropriate thought form; denied hallucinations; euthymic, depressed, anxious, worried, and irritable mood; alert cognitive function; oriented to person, place, time, situation; good concentration, short-term and long-term recall, and fund of knowledge; and fair insight, judgment, and impulse control.  (A.R. 613-14.)
- Assessed major depressive disorder, recurrent and moderate; PTSD, chronic; GAD; severe episode of recurrent major depressive disorder with psychotic features; and cocaine and alcohol abuse.  (A.R. 614.)
- Additionally, NP-P Tigenoah completed a Treating Physician's/Wellness Plan Report this same date, in which he states Plaintiff "continues to exhibit symptoms to include anxiety, depression, trauma to include nightmares, intrusive thoughts, heart palpitations, poor concentration, [and] panic attacks."  (A.R. 255.) In the report he states that Plaintiff's condition has yet to be resolved or stabilized and that she has been complaint with her treatment plan.  (A.R. 255-56.)  Finally, he opines that Plaintiff would be unable to work for at least 12 months.  (A.R. 256.)  The Report notes that Plaintiff was taking the following medications: Oxazepam, Remeron, and Celexa (A.R. 474.)

March 29, 2018 (A.R. 610.)
- Plaintiff reported medication ineffectiveness and difficulty sleeping at night and an increased depressed mood.
- Mental status exam: cooperative, anxious, confused, and withdrawn attitude; normal speech; goal directed thought form; denied hallucinations; euthymic, depressed, anxious,

6

worried, and irritable mood; alert cognitive function; oriented to person, place, time, situation; good concentration, short-term recall, and fund of knowledge; and fair insight. (A.R. 611.)

- Assessed major depressive disorder, recurrent and moderate; PTSD, chronic; GAD; and severe episode of recurrent major depressive disorder with psychotic features; and cocaine and alcohol abuse.  (A.R. 611.)

May 10, 2018 (A.R. 607.)

- Plaintiff reported medication effectiveness but also reported some psycho-social stressors.  Plaintiff's Clonazepam was titrated up.
- Mental status exam: cooperative, anxious, confused, and withdrawn attitude; normal speech, appropriate thought form; denied hallucination; euthymic, depressed, anxious, angry, worried, and irritable mood; alert cognitive function; oriented to person, place, time, situation; good concentration, short-term and long-term recall, fund of knowledge, and judgment; and fair insight and impulse control. (A.R. 607-08.)
- Assessed major depressive disorder, recurrent and moderate; PTSD, chronic; GAD; and severe episode of recurrent major depressive disorder with psychotic features.  (A.R. 608.)

June 2, 2018 (A.R. 602.)

- Plaintiff reported medication effectiveness.  Plaintiff's Clonazepam was titrated up.
- Mental status exam: cooperative, anxious, and withdrawn attitude; normal speech; appropriate thought form; denied hallucinations; euthymic and depressed mood; alert cognitive function; oriented to person, place, time, situation; good concentration, short-term and long-term recall, fund of knowledge, insight, impulse control, and judgment. (A.R. 602-03.)
- Assessed major depressive disorder, recurrent and moderate; PTSD, chronic; GAD; and severe episode of recurrent major depressive disorder with psychotic features.  (A.R. 603.)

June 30, 2018 (A.R. 539.)

- Plaintiff reported medication effectiveness.  Plaintiff's Clonazepam was titrated up.
- Mental status exam: cooperative, anxious, and withdrawn attitude; normal speech; appropriate thought form; denied hallucinations; euthymic and depressed mood; alert cognitive function; oriented to person, place, time, situation; good concentration, short-term and long-term recall, fund of knowledge, insight, impulse control, and judgment. (A.R. 539-40.)

7

- Assessed major depressive disorder, recurrent and moderate; PTSD, chronic; GAD; and severe episode of recurrent major depressive disorder with psychotic features.  (A.R. 540.)

July 28, 2018 (A.R. 537.)

- Plaintiff reported medication effectiveness.
- Mental status exam: cooperative attitude; normal speech; appropriate thought form; denied hallucinations; euthymic, depressed, and worried mood; alert cognitive function; oriented to person, place, time, situation; good concentration, short-term and long-term recall, fund of knowledge, insight, impulse control, and judgment. (A.R. 537-38.)
- Assessed major depressive disorder, recurrent and moderate; PTSD, chronic; GAD; and severe episode of recurrent major depressive disorder with psychotic features.  (A.R. 538.)

September 1, 2018 (A.R. 535.)

- Plaintiff suffers from depression and anxiety and reported medication ineffectiveness and increased depressed mood and anxiety.  Plaintiff's Clonazepam was titrated up.
- The record does not indicate that a mental status exam was conducted.
- Assessed major depressive disorder, recurrent and moderate; PTSD, chronic; GAD; and severe episode of recurrent major depressive disorder with psychotic features.  (A.R. 535.).

November 10, 2018 (A.R. 533.)

- Plaintiff suffers from depression and anxiety and is responding to treatment.
- Mental status exam: cooperative attitude; normal speech; appropriate thought form; no delusions; denied hallucinations; depressed, angry, and worried mood; alert cognitive function; oriented to person, place, time, situation; and good concentration, short-term recall, and fund of knowledge.  (A.R. 534.)
- Assessed major depressive disorder, recurrent and moderate; and PTSD, chronic. (A.R. 534.)

November 12, 2018 (A.R. 531.)

- Plaintiff suffers from depression and anxiety and is responding to treatment.
- Mental status exam: cooperative attitude; normal speech; appropriate thought form; no delusions; denied hallucinations; depressed, angry, and worried mood; alert cognitive function; oriented to person, place, time, situation; and good concentration, short-term recall, and fund of knowledge.  (A.R. 531-32.)

- Assessed major depressive disorder, recurrent and moderate; and PTSD, chronic. (A.R. 532.)

   **c.  John Shaw, Licensed Clinical Social Worker ("LCSW") at HRHCARE**

LCSW Shaw, Plaintiff's other long-term mental health care providers, met with Plaintiff

weekly for 30-minute sessions beginning in November 2017.  A summary of his treatment notes

is as follows:

November 10, 2017 (A.R. 628.)

- Plaintiff reported taking her medications.
- Mental status exam: cooperative, anxious, confused, and withdrawn attitude; normal speech; appropriate thought form; no delusions; denied hallucinations; euthymic, depressed, anxious, worried, and constricted mood; alert cognitive function; oriented to person, place, time, situation; good concentration, short-term and long-term recall, fund of knowledge, and intellectual functioning; and fair insight, judgement, and impulse control.  (A.R. 628.)
- Assessed that Plaintiff suffered from major depressive disorder, recurrent and moderate; PTSD, chronic; GAD; and cocaine and alcohol abuse.  (A.R. 628.)  LCSW Shaw also noted that Plaintiff spoke of being moody and anxious.  (A.R. 628-29.)

December 22, 2017 (A.R. 621.)

- Plaintiff reported taking her medications.
- Mental status exam: cooperative, defensive, anxious, suspicious, and oppositional attitude; pressured speech; appropriate thought form; no delusions; denied hallucinations; depressed, anxious, angry, worried, and irritable mood; alert cognitive function; oriented to person, place, time, situation; good concentration, short-term and long-term recall, fund of knowledge, intellectual functioning, impulse control, and judgment; and fair insight.  (A.R. 622.)
- Assessed that Plaintiff suffered from major depressive disorder, recurrent and moderate; PTSD, chronic; GAD; and cocaine and alcohol abuse.  (A.R. 622.)  LCSW Shaw also noted that Plaintiff described herself as mentally exhausted and emotionally drained after an argument with her husband.  (A.R. 622.)

May 25, 2018 (A.R. 605.)

- Plaintiff reported taking her medications.

9

- Mental status exam: cooperative, defensive, and withdrawn attitude; pressured speech; appropriate thought form; no delusions; denied hallucinations; euthymic, depressed, anxious, angry, and irritable mood; alert cognitive function, oriented to person, place, time, situation; good concentration, short-term and long-term recall, fund of knowledge, intellectual functioning, judgment, and insight; and fair impulse control. (A.R. 605.)
- Assessed that Plaintiff suffered from major depressive disorder, recurrent and moderate; PTSD, chronic; and GAD. (A.R. 605.)  LCSW Shaw also noted that Plaintiff had a flashback that led her to be anxious for half of a day and if she wakes up with a flashback the anxiety lasts even longer.  (A.R. 606.)

July 27, 2018 (A.R. 597.)

- Plaintiff reported taking her medications.
- Mental status exam: cooperative attitude; normal speech; appropriate thought form; no delusions; denied hallucinations; euthymic, depressed, and worried mood; alert cognitive function; oriented to person, place, time, situation; good concentration, short-term and long-term recall, fund of knowledge, intellectual functioning, judgment; insight, and impulse control.  (A.R. 597.)
- Assessed that Plaintiff suffered from major depressive disorder, recurrent and moderate; PTSD, chronic; and GAD.  (A.R. 597.)  LCSW Shaw also noted that Plaintiff has been on edge emotionally after a support pet died in her arms the day before.  Plaintiff and her husband also have been discussing moving to Connecticut.  (A.R. 598.)

August 23, 2018 (A.R. 593.)

- Plaintiff reported taking her medications.
- Mental status exam: cooperative attitude; normal speech; appropriate thought form; no delusions; denied hallucinations; euthymic, depressed, and anxious mood; alert cognitive function; oriented to person, place, time, situation; good concentration, short-term and long-term recall, fund of knowledge, intellectual functioning, and judgment; and fair insight and impulse control. (A.R. 593.)
- Assessed that Plaintiff suffered from major depressive disorder, recurrent and moderate; PTSD, chronic; and GAD.  (A.R. 593.)  LCSW Shaw also noted that Plaintiff identified fear as a trigger for her anxiety.  (A.R. 594.)

August 31, 2018 (A.R. 591.)

- Plaintiff reported taking her medications.
- Mental status exam: cooperative attitude; normal speech; appropriate thought form; no delusions; denied hallucinations; euthymic, depressed, and anxious mood; alert cognitive function; oriented to person, place, time, situation; good concentration, short-term and

long-term recall, fund of knowledge, intellectual functioning, judgment, and insight; and fair impulse control.  (A.R. 591.)

- Assessed that Plaintiff suffered from major depressive disorder, recurrent and moderate; and PTSD, chronic.  (A.R. 591.)  LCSW Shaw also noted that Plaintiff plans to use her dialogue with her son to address the anxieties she is experiencing. (A.R. 592.)

September 7, 2018 (A.R. 586.)

- Plaintiff reported taking her medications.
- Mental status exam: cooperative attitude; normal speech; appropriate thought form; no delusions; denied hallucinations; euthymic, depressed, angry, and worried mood; alert cognitive function; oriented to person, place, time, situation; good concentration, short-term and long-term recall, fund of knowledge, intellectual functioning, and judgment; and fair insight and impulse control.  (A.R. 586.)  Assessed that Plaintiff suffered from major depressive disorder, recurrent and moderate; and PTSD, chronic. (A.R. 586.)  Plaintiff also stated she looked forward to possibly relocating to restructure her family's environment. (A.R. 587.)
- On this same date, LCSW Shaw completed a Medical Source Statement about what Plaintiff can do despite her mental impairments.  The statement also bears the stamp of NP-P Tigenoah.  (A.R. 530.)  The Statement says that Plaintiff's symptoms began at least since August 2014 when she reported suffering from sleep disturbance, mood disturbance, recurrent panic attacks, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, intrusive recollections of traumatic experience, and generalized persistent anxiety.  (A.R. 527-30.)  LCSW Shaw concluded that Plaintiff would be absent from work more than three times a month and that Plaintiff had an "extreme loss" in sustaining or performing the necessary mental activities on a regular and continuing basis for a normal workday.  *Id.*  In the Medical Source Statement, LCSW Shaw assessed that Plaintiff had an "extreme," or "continual" loss of ability to perform 16 of the twenty-eight functions tracked by the assessment, and a "marked loss" or "frequent loss" in five other abilities.  (A.R. 529-30.)  Specifically, LCSW Shaw found Plaintiff had an extreme loss in interacting with the public, accepting instructions and criticism from supervisors, getting along with co-workers without distraction, responding appropriately to changes in a routine setting, travel in unfamiliar places, using public transportation, difficulties in maintaining social functioning, and episodes of deterioration or decompensation in a work-like setting.  *Id.*  As to the marked limitations, he assessed that Plaintiff lacked the ability to maintain socially appropriate behavior, be aware of normal hazards and take precautions, set realistic goals or make plans independently of others, and deficiencies of concentration in work-like settings.  *Id.*

January 18, 2019 (A.R. 580.)

- Plaintiff was not taking her psychotropic medications and had not seen her prescriber for a few months.
- Mental Status Exam: withdrawn attitude; normal speech; appropriate thought form; denied hallucinations; depressed mood; alert cognitive function; oriented to person, place, time, and situation; good concentration, fund of knowledge, short-term and long-term recall, intellectual functioning, and judgment; and fair insight and impulse control. (A.R. 580)
- Assessed that Plaintiff does not feel medication is effective consistently and that she oversleeps if she is fatigued or depressed.  However, if Plaintiff is suffering from PTSD or anxiety she does not sleep.  Due to her depression, Plaintiff sometimes wants to seclude herself.  Lastly, LCSW Shaw notes that Plaintiff's clashes with her mother trigger panic attacks.  (A.R. 581.)

**d. M. Juriga, Ph.D.**

On May 11, 2018, Dr. Juriga a non-examining physician, completed a Disability

Determination Explanation based on information provided by Plaintiff in connection with her

application, as well as from the Tigenoah Wellness Plan Report and Shaw Medical Source

Statement, and FEDCAP information (discussed below).  (A.R. 53.)  Dr. Juriga found that Plaintiff

had no limitations in understanding, remembering, or applying information.  (A.R. 59.)  Dr.

Juriga also found Plaintiff had moderate limitations with: interacting with others;

concentrating, persisting, and maintaining pace; and adapting or managing oneself.  *Id.*  Plaintiff

was also moderately limited in: her ability to work in proximity to others without being

distracted by them; travel to unfamiliar places; and make realistic goals independently of

others.  (A.R. 62-63.)  Finally, Dr. Juriga concluded that Plaintiff retains the ability to perform

skilled work in a low contact setting and that Plaintiff's subjective complaints are supported but

not to the extent alleged.  (A.R. 59-60.)

12

### e. Laura Kerenyi, Ph.D., Consultative Examination

On May 3, 2018, Dr. Kerenyi performed a consultative examination of Plaintiff.  Dr. Kerenyi reported that Plaintiff was accompanied by her husband to her scheduled evaluation and commuted by train.  (A.R. 496.)  Plaintiff reported difficulty falling asleep and waking up at least twice a night.  *Id.*  She also reported a loss of appetite that led to her losing 35 pounds in a 9-month timespan.  *Id.*  Plaintiff also reported "depressive symptomology includ[ing] dysphoric mood, loss of usual interest, fatigue, loss of energy, concentration difficulties, and social withdrawal."  (A.R. 496-97.)  Regarding her anxiety, Plaintiff reported "excessive apprehension and worry, restlessness, easily fatigued, difficulty concentrating, and muscle tension."  (A.R. 497.)  Plaintiff also reported a phobia of crowds.  *Id.*  Stemming from the trauma of being raped, Plaintiff said she experienced nightmares 4-to-5 times a month and panic attacks about three times a week.  *Id.*  The panic attacks included symptoms of difficulty breathing and concentrating, and trembling.  *Id.*  Plaintiff also reported auditory hallucinations.  *Id.*

Plaintiff appeared well groomed and dressed appropriately.  (A.R. 498.)  Dr. Kerenyi found that Plaintiff's thought process was coherent, goal directed, and did not show "evidence of hallucinations, delusions, or phobia in the evaluation setting."  *Id.*  Plaintiff appeared depressed, but her concentration was intact.  *Id.*  Plaintiff's memory was also intact, being able to immediate recall object with no or slight delay.  *Id.*  Plaintiff had fair insight and judgment. *Id.*  She also found that Plaintiff could take public transportation independently.  (A.R. 499.)

Dr. Kerenyi concluded that Plaintiff is "not limited in her ability to understand, remember, and apply simple [and complex] directions and instructions. . . .  not limited in her

ability to use reason and judgment to make work-related decisions." *Id.*  However, Dr. Kerenyi

also found that Plaintiff is "mildly limited in her ability to interact adequately with supervisors,

coworkers, and the public" but "not limited in her ability to sustain concentration and perform

a task at a consistent pace . . . not limited in her ability to sustain an ordinary routine and

regular attendance at work." *Id.*  Finally, Dr. Kerenyi concluded that "[t]he results of the

examination appear to be consistent with psychiatric and substance abuse problems, but in

itself, this does not appear to be significant enough to interfere with the claimant's ability to

function on a daily basis." *Id.*

### f.   Meishal Suazo, FEDCAP Case Manager

Meishal Suazo, Plaintiff's case manager through FEDCAP, a non-profit organization,

submitted a Functional Assessment Report dated April 6, 2018.  Suazo, who met with Plaintiff

for about 2-3 hours every 45 days, stated that Plaintiff's conditions limits her "ability to perform

regular work and get out of bed every morning. She feels fatigue (sic) due to the medications

prescribed by her doctor." (A.R. 181.)  However, Suazo also stated that Plaintiff wakes up at

7:30 am to prepare her kids for school and make them breakfast.  (A.R. 182.)  He wrote that

Plaintiff's husband reminds her of her upcoming appointments.  (A.R. 186.)  He wrote Plaintiff

has no difficulty following written or verbal instructions and has no issues with authority

figures.  (A.R. 187-88.)

### 3.   *The Commissioner's Decision*

ALJ Martin found that Plaintiff has the following severe impairments: Major Depressive

Disorder, Post-Traumatic Stress Disorder (PTSD), Generalized Anxiety Disorder (GAD), and

Asthma, and noted that these "impairments significantly limit the ability to perform basic work activities as required by [the regulations]." (A.R. 14.)  However, at step three of the sequential analysis, ALJ Martin determined the Plaintiff's impairments did not meet or medically equal the criteria of Listings in 12.04, 12.06, and 12.15, specifically analyzing the "paragraph B" and "paragraph C" criteria of the Listings. (A.R. 14-16.)  In making this determination, ALJ Martin found that Plaintiff did not suffer from at least one extreme or two marked limitations in the listed functional areas. (A.R. 15.)  Rather, ALJ Martin found the Plaintiff had no limitation in understanding, remembering, or applying information and moderate limitations in interacting with others; in concentrating, persisting, or maintaining pace; and managing herself. (A.R. 15-16.)

While acknowledging her mental impairments and symptoms, the ALJ nonetheless concluded that Plaintiff retained the RFC to:

> Perform a full range of work at all exertional levels but with the following nonexertional limitations . . .  She is limited to unskilled, simple, routine, repetitive job.  She should have no interaction with the general public, but can have occasional interaction with supervisors and coworkers.  There can be no fast paced or high production work.

(A.R. 16-17.)  This assessment was based on a full review of Plaintiff's medical records, including treatment notes from Plaintiff's treating providers, and her symptoms over time. (A.R. 16.)  ALJ Martin found that Plaintiff's description of the limitations caused by her impairments were not as intense, persistent, or functionally limiting as she testified at the hearing given her reports to her doctors over time and the information from the various providers and consultants in the record. (A.R. 17-19.)  At step five, ALJ Martin found that considering Plaintiff's age, education,

15

work experience, and RFC, and relying on the VE's testimony, there are jobs "in significant

numbers in the national economy that the [Plaintiff] can perform" such as retail marker, office

clerk, and packager.  (A.R. 23-24.)  Thus, ALJ Martin found that Plaintiff had not been disabled

since May 1, 2014 through the date of the decision.  (A.R. 24.)

## DISCUSSION

### 1.   Standard of Review

A court's review of a Social Security disability determination requires two distinct

inquiries.  *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987); *Dwyer v. Astrue*, 800 F. Supp.

2d 542, 546 (S.D.N.Y. 2011).  First, the court must determine whether the Commissioner

applied the correct legal principles in reaching a decision.  *See Estrella v. Berryhill*, 925 F.3d 90,

95 (2d Cir. 2019).  Second, the court must decide whether the Commissioner's decision is

supported by substantial evidence in the record.  *Id.*  If the Commissioner's decision is

supported by substantial evidence, the ALJ's findings as to any facts are conclusive.  42 U.S.C.

§§ 405(g), 1383(c)(3).

An ALJ's failure to apply the correct legal standard constitutes reversible error if that

failure might have affected the disposition of the case.  *See Kohler v. Astrue*, 546 F.3d 260, 265

(2d Cir. 2008).  An ALJ also has an affirmative duty to develop the record on behalf of claimants,

including those represented by counsel.  *See Moran v. Astrue*, 569 F.3d 108, 112-13 (2d Cir.

2009); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).

If the reviewing court is satisfied that the ALJ properly developed the record and applied

the correct legal standards, then the court must "conduct a plenary review of the

administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447 (2d Cir. 2012) (*per curiam*) (quoting *Moran*, 569 F.3d at 112). The Supreme Court has defined substantial evidence as requiring "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard means once an ALJ finds facts, a reviewing court may reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

If the decision denying benefits applied the correct legal standards and is based on substantial evidence, the reviewing court must affirm; if not, the court may modify or reverse the decision, with or without remand. 42 U.S.C. § 405(g).

### 2. Analysis

As a threshold matter, the "court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record." *Intonato v. Colvin*, 2014 WL 3893288, at *8 (S.D.N.Y. Aug. 7, 2014) (*quoting Scott v. Astrue,* 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010)). In this case, neither party contends that the ALJ failed to develop the record, and, after a careful review, the Court finds that ALJ Martin has sufficiently developed the record. At issue is whether the ALJ properly considered the medical evidence and Plaintiff's own testimony about her limitations and

17

whether substantial evidence supports the ALJ's decision.  Plaintiff asserts that the ALJ failed to

properly evaluate the medical opinion evidence pertaining to Plaintiff's mental impairments

and likewise failed to properly evaluate Plaintiff's subjective statements about her mental

health-related symptoms and limitations in finding that she could work subject to limitations

that accommodated her needs.

To start, it is clear that ALJ Martin carefully considered the medical record as a whole

when determining Plaintiff's RFC.  Plaintiff argues that the ALJ improperly discounted the

September 2018 Medical Source Statement signed by Shaw and Tigenoah's March 2018

Wellness Report, which both indicated that Plaintiff could not work.  But, the ALJ explained she

found these opinions not persuasive because both providers' treatment notes over the history

of treating Plaintiff did not support their opinions.  The ALJ cited to both providers' notes from

over the course of their treatment, including the results of mental status exams, almost all of

which noted that Plaintiff had good concentration, good short-term and long-term recall, a

good fund of knowledge and intellectual functioning as well as fair insight, judgement, and

impulse control, notwithstanding her persistent anxiety and depressed mood.  (A.R. 18-20.)  At

times, Plaintiff's medication was adjusted based on her reporting of its efficacy, but in general,

the treatment notes reflect a patient who was managing her conditions through regular

therapy and medication without any periods of decompensation or hospitalization noted in the

treatment notes.  *Id.*  The notes indicate that Plaintiff denied hallucinations throughout this

period.  The ALJ thus viewed both provider's opinions as not consistent with their own

treatment notes over time and also not consistent with the evidence as a whole.  Just by way of

18

example, the 2018 Report indicated that Plaintiff had an extreme loss in ability to understand and remember detailed instructions, carry out detailed instructions, yet Tigenoah's and Shaw's treatment notes reflect no deficits in understanding or remembering. (*See* A.R. 22.) Similarly, the 2018 Report indicates Plaintiff had a marked loss in maintaining concentration and socially appropriate behavior, yet Tigenoah's and Shaw's treatment notes over time indicate good concentration and no issues with behavior. *Id.* And Suazo's April 2018 Report indicates that Plaintiff has no difficulty following written and spoken instructions, paying attention, and getting along with others. (A.R. 187-88.)

It is clear that the ALJ did carefully review the evidence as a whole and over time, as she described in detail Plaintiff's early treatment starting in 2014 when she reported some visual hallucinations and panic attacks, but also noted treatment notes showing that Plaintiff's symptoms improved with medication and techniques from her therapist, noted a gap in treatment and then resumption of treatment with Tigenoah and Shaw when Plaintiff's own reported symptoms were less severe than when she first sought treatment in 2014. Importantly, the ALJ did not ignore but rather acknowledged symptoms such as anxiety in crowds, night sweats, isolation period, and sleep disturbances, but nevertheless found that these were not so disabling as to preclude Plaintiff from working with appropriate limitations.

The ALJ also considered the evaluation of the consultative examiner, who likewise found, among other things, that Plaintiff displayed normal thought processes, was fully alert and oriented, had intact concentration and memory, which was relatively consistent with Plaintiff's own description of her activities of daily living which included cooking for her family,

19

cleaning and doing laundry, shopping, managing her own money, attending children's activities and caring for the needs of her children.[3]  (A.R. 20-22.)  The ALJ found the consultative examiner's opinion somewhat persuasive insofar as it was supported by a generally intact, one-time mental status examination but not consistent with treatment notes showing some fluctuating symptoms of depression and anxiety necessitating ongoing treatment and adjustments to medications.  (A.R. 22.)  She noted the state agency consultant found that Plaintiff had moderate limitations in interacting with others, concentrating, persisting, and maintaining pace, and adapting and managing herself, which the ALJ found somewhat persuasive given Plaintiff's own report of her activities and other evidence in the record.  (A.R. 21.)  In sum, the ALJ fully explained how Plaintiff's treating providers' opinions were not supported or consistent with the record as a whole taking into account Plaintiff's treatment over time, consistent with applicable regulations.  20 C.F.R. § 404.1520c and §416.920c; see also *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020)).  Though ALJ Martin did not give substantial weight to any one opinion, she was not required to do so and was entitled to weigh the evidence and resolve any conflicts in arriving at a determination of Plaintiff's RFC.  *See Whipple v. Astrue*, 479 F. App'x 367 (2d Cir. 2012).

---

[3] The Court acknowledges that being able to engage in some activities of daily living do not necessarily contradict an allegation of mental disability, but the ALJ was entitled to consider this and properly did so in the context of the record as a whole without mischaracterizing Plaintiff's own testimony or the medical evidence and on a fully developed record.  The cases Plaintiff cites on this point are distinguishable.  *Scognamilglio v. Saul*, 432 F. Supp.3d 239 (EDNY 2020) (finding that ALJ erred by mischaracterizing claimant's testimony about pain and functionality and did not discuss how the testimony compared to record evidence of Plaintiff's limitations*); Iorio v. Comm'r of Soc. Sec.*, 18-cv-5898, 2020 WL 1536406  (E.D.N.Y. Mar. 30, 2020) (remanding for failure to develop the record; noting that plaintiff's testimony about her inability to walk and stand and do housework was consistent with the medical records and that mere capability for performing a "little housework" does not contradict a finding of disability).

Although Plaintiff argues that the ALJ should have noted that Shaw's notes were signed by Tigenoah, it is clear this would not have changed the ALJ's analysis insofar as the two's treatment notes and mental status assessments have similar findings as to Plaintiff's mental state and capabilities.

To the extent Plaintiff argues that the ALJ also erred in failing to give appropriate weight to Plaintiff's hearing testimony about her symptoms, the Court disagrees.  An ALJ may "exercise discretion in weighing . . . the claimant's testimony in light of the other evidence in the record." *Timothy M. v. Kijakazi*, 2021 WL 4307455, at *14 (N.D.N.Y. Sept. 22, 2021) (citing *Genier* 606 F.3d at 49).  Further, subjective statements alone are not enough to support a finding of disability.  *Rodriguez v. Kijakazi*, 2021 WL 5292751, at *12 (S.D.N.Y. Nov. 15, 2021) (citing *Genier* 606 F.3d at 49).  Here, ALJ Martin considered Plaintiff's subjective statements when she found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and [the record]."  (A.R. 17.)  ALJ Martin considered the consultative examination of Dr. Kerenyi who evaluated the Plaintiff and noted she was "coherent and goal directed . . . fully alert and oriented, and her attention, concentration, recent and remote memory skills were intact."  (A.R. 20.)  After conducting some testing, Dr. Kenyeri found that Plaintiff could "sustain concentration, perform a task at a consistent pace; [and] sustain an ordinary routine and regular attendance at work[.]"  (A.R. 22.)  ALJ Martin also relied on Plaintiff's psychiatry and therapist notes throughout the relevant period (as detailed above) which show that Plaintiff's

thought process, short and long-term memory, intellectual functioning remained intact, and did not indicate Plaintiff suffered any issues pertaining to concentration or cognition.

After reviewing the record, ALJ Martin found that medication was often effective at managing Plaintiff's mood and anxiety and did not have any notable side effects, and even during periods when Plaintiff's symptoms worsened to a degree, Plaintiff's "mental status examinations were generally intact and showed few abnormalities." (A.R. 18.) ALJ Martin also considered the functional report of Plaintiff's case manager, Meishel Suazo, who reported that Plaintiff had no difficulty following instructions, had no problem getting along with family, friends, authority figures, but did not associate herself with others because of her conditions. (A.R. 21.) The ALJ was entitled as well to factor in the efficacy of medications in treating Plaintiff's symptoms, which enabled her to, among other things, care for her children and herself, go on public transportation, attend events/appointments for her children and manage her money. See *Garces v. Comm'r of Soc. Sec.*, 2021 WL 1178003, at *33 (S.D.N.Y. Mar. 29, 2021) ("Factors that are relevant to a claimant's subjective complaints of limitations include the type, dosage, effectiveness, and side effects of any medications taken to alleviate pain and other symptoms") (internal quotation and citation omitted); see also *Laura Anne H. v. Saul*, 2021 WL 4440345, at *5 (N.D.N.Y. Sept. 28, 2021); *Timothy M.*, 2021 WL 4307455, at *14.

Plaintiff's argument that the ALJ erred in considering her lack of her hospitalization in finding that she was not disabled is not persuasive.[4] Courts in this circuit have found that a

---

[4] Plaintiff correctly posits that the ALJ should not have found that her treatment was conservative given courts reluctance to describe all mental health treatment plans short of hospitalization as such. *See Rivera v. Comm'r of Soc. Sec.*, 2020 WL 8167136 (S.D.N.Y. Dec. 30, 2020). Nonetheless, ALJ Martin's decision is still supported by substantial evidence in light of the overall record. *See Thomas v. Comm'r of Soc. Sec.*, 2020 WL 4757059 at *89

pattern of treatment, "such as mental health treatment with medication and therapy but not in-patient or hospitalization care, is a proper factor for an ALJ to consider in evaluating a claimant's credibility." *Thomas v. Comm'r of Soc. Sec.* 2020 WL 4757059 at *89 (S.D.N.Y. Aug. 18, 2020) (internal citations and quotations omitted).  Accordingly, ALJ Martin was entitled to consider this fact along with the entire record in determining the weight to afford Plaintiff's subjective complaints.

In sum, the Court finds no error in the ALJ's consideration and discussion of the medical evidence and Plaintiff's subjective complaints when determining Plaintiff is not disabled. Substantial evidence supports the determination.  This case is similar to others within this Circuit where courts have upheld a finding that a claimant with mental health impairments, though severe, could nonetheless perform work subject to certain limitations similar to the ones imposed by ALJ Martin.  *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (in case involving claimant with anxiety and depression, ALJ did not afford controlling weight to treating psychiatrist who had counseled claimant and prescribed medicine for over fifteen years; stating "the ALJ [properly] rejected [the treating physician's] opinion because she found it was contrary to his own treatment notes" and "[w]hile [the] medical source statement is supported by some evidence, the ALJ's decision to disregard [the] opinion is nevertheless substantially supported by the record."); *Whipple*, 479 F. App'x 367 (affirming denial of disability benefits; ALJ's residual functional capacity determination for claimant with mental

---

(S.D.N.Y. Aug. 18, 2020) (In reviewing an ALJ's determination that a treatment plan is conservative "[w]hat matters, however, is whether the nature of [claimant's] treatment, as reflected in [treatment] notes, constituted substantial evidence supporting the ALJ's decision to discount [claimant's] hearing testimony as to her impairments.").

health impairments was supported by substantial evidence and properly applied standard in

finding that claimant's reported symptoms were not as limiting as he claimed in light of

conflicting evidence from treating physicians and other medical professionals and claimant's

own description of his daily living activities); *Gates v. Astrue*, 338 F. App'x 46, 48 (2d Cir. 2009)

(ALJ's determination that the claimant, who alleged disability due to cognitive impairments,

was able to perform work at all exertional levels with nonexertional limitations, was supported

by mental health progress notes, assessments stating that the claimant could perform simple

tasks, and the claimant's past job experience; ALJ's reasoning was "clearly discernible"); *Knief v.*

*Comm'r of Soc. Sec.*, 2021 WL 5449728 (S.D.N.Y. Nov. 22, 2021) (claimant alleged disabling

mental impairments including depression, anxiety, panic disorder and possible PTSD and

exhibited, among other symptoms, crying spells, social withdrawal, apprehension around

people, difficulty adapting and maintaining composure, and limitations in concentrating,

accepting instructions, and interacting with others; ALJ properly applied new regulations in

finding that claimant was not disabled and could perform simple work activities in low stress

environment with only occasional interaction with others; granting Commissioner's motion for

summary judgment); *Douglas v. Saul*, 2021 WL 2852962 (S.D.N.Y. July 8, 2021) (claimant alleged

disabling mental impairments including depression, anxiety, PTSD, and insomnia and asthma

and exhibited, among other symptoms, frequent crying, depressed mood, poor concentration,

poor memory, limited insight and judgment, limited ability to perform calculations and serial

sevens, marked limitations in carrying out instructions; court found ALJ did  not err in not giving

controlling weight to treating psychiatrist because it was clear the ALJ considered the amount

24

of medical evidence supporting the treating provider's opinion and its consistency with the

remaining medical evidence and accounted for claimant's difficulties in residual functional

capacity determination which limited claimant to low stress, simple, routine work with limited

interaction with general public; remanded for failure to consider limitations from asthma);

*Blackman v. Comm'r of Soc. Sec.*, 2020 WL 5813319 (S.D.N.Y. Sept. 30, 2020) (claimant alleged

disabling mental impairments including depression and anxiety and exhibited, among other

symptoms, difficulty sleeping, crying spells, poor impulse control, and panic attacks resulting in

hospital emergency room visits; granting Commissioner's motion for summary judgment

because ALJ's decision supported by substantial evidence notwithstanding fact that mental

health symptoms waxed and waned over time; noting that claimant responded well to

medication and had conservative care); *Moore v. Comm'r of Soc. Sec.*, 2020 WL 5077347

(S.D.N.Y. Aug. 27, 2020) (ALJ did not err in according less weight to treating psychiatrist's

opinion because ALJ explained opinion inconsistent with doctor's own treatment notes

reflecting mostly normal examinations and effective management of symptoms from anxiety

and PTSD); *Collier v. Berryhill*, 2020 WL 3638515 (S.D.N.Y. July 6, 2020)(claimant alleged

disabling mental impairments including depression, anxiety, PTSD, and bipolar disorder and

reported trouble interacting with others, flashbacks and nightmares, inability to leave her

home more than once a month; treating doctor found claimant had poor memory, paranoia,

difficulty concentrating, decreased energy, and would likely be absent from work three times

per week; ALJ did not err in concluding that claimant could work but limited to low stress work

with simple, routine, repetitive tasks involving only occasional interaction with public,

coworkers and supervisors; ALJ's finding supported by substantial evidence including treatment

notes over history of illness and ALJ provided good reasons for not giving controlling weight to

treating doctor's opinion).

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is DENIED,

and Defendant's motion for judgment on the pleadings is GRANTED.

Dated: December 8, 2021
    New York, New York

KATHARINE H. PARKER
United States Magistrate Judge